## GREENWAY *v.* SCOGGINS.

GILBERT, J. 1. The court did not err in overruling the demurrer, nor in allowing the two amendments to the petition.

2. It is well settled that assignments of error upon the admission of evidence cannot be considered when they do not set out the evidence admitted. See list of cases cited as authority in Mich. Ga. Dig. 2 Cum. Supp. 203.

3. Ground six of the amended motion for new trial complains that the court erred in admitting the testimony of a witness for plaintiff, " That Mr. Mincey did say that Mr. Greenway never understood the contract until he came to see him about it; he made that statement on two or three occasions," over objection by defendant's counsel that " it did not appear that said statement by Mr. Mincey to witness was in the presence of the defendant," and " that it was inadmissible against defendant." The evidence admitted was not of sufficient materiality to require reversal of the judgment.

4. Another ground of the motion for new trial assigns error on the charge of the court " as a whole." The charge of the court not being erroneous as a whole, this ground of the motion is without merit. *Powell* v. *State*, 122 *Ga.* 571 (50 S. E. 369); *Foote* v. *Kelley*, 126 *Ga.* 799 (55 S. E. 1045).

5. The excerpts from the charge of the court complained of in the eighth and ninth grounds of the amendment to the motion for new trial, which seem to exclude from the jury consideration of parol evidence unless they found the contract to be ambiguous, even if inaccurate, were in no event hurtful to the defendant.

6. Error is assigned on the following charge of the court: " The intention of the parties may differ among themselves. In such cases the meaning placed on the contract by one party, and known to be thus understood by the other party at the time, shall be held as the true meaning." The criticism is that it was unsupported by the evidence, and because it was not adapted to the case, and because the contract, as movant contends, being unambiguous, the said charge was contrary to law, and not appropriate to the case." Under the pleadings and the evidence this charge of the court was not erroneous.

7. Error is assigned on the following charge of the court: "If they both believed that Mr. Scoggins was to have 75 per cent. net on the dollar for his merchandise, fixtures, and accounts that were owing to the store, and if their intention, the intention of both of them, was to pay him that, and they both believed as a matter of law that the contract and according to the language of the contract as drawn, if they both believed and both interpreted the contract at that time that that was to be done, then the interpretation by both of them would control." The criticism is that the charge was an "intimation by the court to the jury that if Mr. Scoggins was to have 75 cents' net on the dollar for his interest, then he should recover in the case, whereas the dispute between the parties and the question at issue was how the 75 cents on the dollar for plaintiff's interest should be computed; and this charge excepted to amounted, movant contends, to an instruction to the jury that if the agreement between the parties was that Mr. Scoggins should have 75 cents on the dollar for his interest, then they should find for the plaintiff, and it was an expression by the court of an opinion that plaintiff is entitled to recover." This charge was not erroneous for the reason stated.

8. The verdict is supported by evidence.

<em>Judgment affirmed. All the Justices concur.</em>

No. 3172. DECEMBER 15, 1922.

Equitable petition. Before Judge J. B. Jones. Hall superior court. March 25, 1922.

On September 24, 1920, Scoggins contracted to sell and Greenway contracted to purchase the interest of Scoggins in Scoggins-Greenway Company, a corporation. The contract recites this interest to be "forty-seven and three elevenths (47-3/11) per cent. of the entire stock." The portions of the contract as written, providing a basis on which to calculate the purchase-price, and around which the controversy revolves, are as follows: "First, there shall be made an accurate inventory of the goods, accounts, and fixtures now belonging to the store; the stock of goods to be figured at invoice cost, the accounts to be figured at par as they stand on the books, and the fixtures to be figured at cost as shown on the books. . . And when the above inventory is completed, the parties shall figure forty-seven and three elevenths per cent. of this, in order to get the total amount of said Scoggins interest in the store. Then from this amount there shall be deducted twenty-five per cent.— it being the agreement of the parties hereto that Scoggins is to sell his interest in said store to said Greenway at seventy-five cents on the dollar. After the last item is figured, then the parties shall deduct forty-seven and three elevenths per

cent. of the entire indebtedness of the store, this being the said Scoggins part of the indebtedness."

On October 12, 1920, Scoggins filed a petition alleging that "said contract, through inadvertence of the draftsman, does not speak the intention of the parties thereto, in that said contract does not provide the method of arriving at said interest of petitioner, . . but provides that in making said calculation the percentage basis shall include the indebtedness, which makes a difference of approximately fourteen hundred dollars in the method of calculation;" that the agreement as made between the parties was "to the effect that the indebtedness of said corporation should be taken off from the invoice price of the stock of merchandise in said company, and that petitioner would sell to said Greenway his interest in said business at and for the price of seventy-five per cent., based on the invoice price of the stock of merchandise and fixtures owned by said corporation, which was to be seventy-five per cent. of 47-3/11 per cent of the invoice price of merchandise and fixtures and bills receivable due said corporation, being the net amount after the deduction of the outstanding indebtedness against said company." In other words, his contention is that the intention of the parties was that from the aggregate value of the assets there should be deducted the total outstanding indebtedness, and that 47-3/11 of this amount, less 25 per cent. of the amount remaining, would represent the amount due by Greenway to petitioner. Greenway's contention is that the calculation should be made by deducting, from the figures representing 75 per cent. of 47-3/11 per cent. of the aggregate value of the assets, 47-3/11 per cent. of the outstanding indebtedness, and that upon the amount thus arrived at he should pay Scoggins 75 cents on the dollar.

During the progress of the cause the plaintiff offered two amendments to his petition. One alleged, that it was the intention of both parties that the contract should be so drafted as to carry into effect the terms of the agreement as contended for by plaintiff; that they employed an attorney to draft the contract, who represented both of them in doing so; that the contract was executed by both of them in ignorance of the fact that its terms were not in accord with their agreement; that neither of them knew of any variance between the terms of the written contract and their intention until after its execution; and that the mistake was mutual.

The other amendment alleges that the defendant knew of the plaintiff's understanding of the terms of agreement and his intention that the contract should be drafted in accordance with that understanding, and that he was in consequence estopped from claiming that the contract could have any other meaning. The defendant objected to the allowance of the first amendment, on the ground that it proposed to change the cause of action in the original petition; and objected to the allowance of the second amendment, on the ground that it had the effect of introducing a new cause of action, and proposed to change the terms of the contract sued on. He also demurred to the petition, on the grounds that the same sets forth no cause of action and no right to the relief asked, or any relief; and especially as the petition shows such negligence by plaintiff at the time of execution of the contract as estops him, as a matter of law, from asking the relief prayed, or any relief. The objections and the demurrer were overruled, and error was assigned on exceptions filed pendente lite.

The parties entered into a written stipulation, which was made a part of the record, to the effect that if the contention of Scoggins is correct the jury should return a verdict for him in the sum of $1406.99, and that if the contention of Greenway is correct the verdict should be for the defendant, Scoggins having admitted that he had been paid in full according to the contention of Greenway as to the method of making the calculation. The plaintiff offered the evidence of R. W. Smith, clerk of Hall superior court, with whom the parties consulted, relatively to the terms of the contract, prior to the drafting of the same, in part as follows: " Mr. Scoggins and Mr. Greenway came to my office. Mr. Scoggins did practically all the talking. Mr. Greenway hardly opened his mouth. Mr. Scoggins stated to me that he had sold his interest in the store to Mr. Greenway for seventy-five cents on the dollar, and they wanted me to show them how to figure it — how to arrive at the amount Mr. Greenway was to pay Mr. Scoggins for his interest. I told them that they were now operating under a charter, and that they were a corporation and not a partnership. That it would be necessary to arrive at the amount by making an inventory, if they wanted to settle on that basis. I told them they would have to make an inventory of the goods, fixtures, and accounts and notes and whatever should be properly considered as

an asset, and then to take from that their indebtedness, and then divide the remainder by the number of shares of stock outstanding — that would give the value of the book value of each share of stock, and then they should multiply that by the number of shares Mr. Scoggins held, and then to deduct twenty-five per cent., and by that means they would ascertain the amount Mr. Greenway would be due Mr. Scoggins. That is the way I explained it to both of them. I might state that in making the calculations Mr. Greenway didn't seem to understand. He didn't seem to understand the way of making those calculations. I would ask him if he understood it, and he wouldn't say very much. My recollection is that in trying to illustrate it to Mr. Greenway I must have made a half dozen calculations I believe. I asked them about what their stock, fixtures, and accounts would invoice, and they told me about thirty-six thousand dollars. I think I used that as a basis, and asked them how much they owed against the business, and my recollection is they said twelve thousand dollars. Then I recall I took from the thirty-six thousand dollars the twelve thousand dollars, leaving twenty-four thousand dollars, and then divided that by the number of shares of stock, and then deducted from that twenty-five per cent., leaving a balance of seventy-five per cent. I explained that, and made several calculations in different ways, trying to make Mr. Greenway understand just how I was trying to figure it. I understood that seventy-five per cent. of the value of the stock was the way they were figuring it. I also stated that in order to arrive at the true amount we would have to take off the indebtedness, because the goods neither belonged to Mr. Greenway nor Mr. Scoggins until paid for. We were trying to arrive at the book value of the shares of their stock. I can't say that Mr. Greenway understood it. Mr. Greenway said, 'I think I understand it; give me the calculations and let me look them over,' and he did take them with him. The inventory had not been made at that time. Mr. Scoggins told me he was selling his interest at seventy-five cents on the dollar for his interest. Mr. Greenway did not make the same statement. He assented to it. If there had been no debts, the method that I prescribed to arrive at the forty-seven and three elevenths per cent. would be exactly as contained in this contract — if they didn't owe anything; but in this particular it is different. It makes a difference whether or not, when

you make an inventory of goods, fixtures, and accounts, as to whether you take off the indebtedness or liabilities before you calculate on the net worth. If they didn't owe any money in the market, I would make an inventory of the goods, fixtures, and accounts, and then deduct twenty-five per cent. from that, and then forty-seven and three elevenths would be Scoggins' part, except the debts; and that is the only thing that makes any difference." In reference to the calculations made by the witness Smith, the plaintiff also testified: " Mr. Greenway didn't thoroughly understand this, and Mr. Smith made three or four calculations trying to show him and make it clear to him, and after going over it several times this way it seemed Mr. Greenway understood it then. It was about lunch time then, and Mr. Greenway asked him to let him take the figures out with him and he would look them over at lunch; — so he carried the figures with him. When we got back to the store after lunch Mr. Greenway came to me and told me he thought he thoroughly understood it and would accept it and buy my interest at seventy-five cents on the dollar."

The jury returned a verdict for the plaintiff for $1406.99. The defendant moved for a new trial, upon the general grounds with amendments thereto; which motion was overruled, and he excepted.

*C. N. Davie* and *H. H. Perry,* for plaintiff in error.

*Charters, Wheeler & Lilly,* contra.